[Cite as *State v. Mitchell*, 2024-Ohio-1715.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 23 CA 00067 |
| GLORIA L. MITCHELL | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Municipal Court,
Case No.  22 CRB 01768


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      May 2, 2024


APPEARANCES:

For Plaintiff-Appellee

J. MICHAEL KING
ASSISTANT LAW DIRECTOR
40 West Main Street, 4th Floor
Newark, Ohio  43055

For Defendant-Appellant

TODD W. BARSTOW
261 West Johnstown Road
Suite 204
Columbus, Ohio  43230

*Wise, J.*

{¶1}   Defendant-Appellant, Gloria L. Mitchell, appeals her conviction of the crime of menacing.   Plaintiff-Appellee is the State of Ohio.   For the reasons that follow, we affirm her conviction and sentence.

### FACTS AND PROCEDURAL HISTORY

{¶2}   On October 23, 2022, ten-year-old S.W. knocked on the door of the apartment of appellant. S.W. was accompanied by her mother, M.W. and the sister of Mitchell.   S.W.'s father was the son of Mitchell and was deceased.   The purpose of the visit was to discuss probate papers regarding his estate and a potential wrongful death action and to discuss the distribution of funds in the estate.   M.W. did not call before the visit but took Mitchell's sister, Mary, with her.   M.W. was not carrying a weapon of any kind; just a cell phone and the probate papers.

{¶3}   Mitchell, seeing her granddaughter, hugged and greeted her.   But when she saw S.W.'s mother, M.W., she became verbally aggressive and started shouting at her. Apparently, there were some bad feelings over a comment on Facebook not to Mitchell's liking.

{¶4}   Mitchell's aggressive behavior to M.W. continued while Mitchell was standing in the doorway of her apartment. M.W. was standing on the cement stoop by the apartment door. Mitchell went inside her apartment and came out brandishing a hammer.

{¶5}   Part of her actions were captured on the cell phone video of M.W.   Mitchell is seen opening her apartment door, shoving her sister, Mary, aside, and vigorously walking down the paved walkway with the hammer held high in her hand.   She is heard

threatening to break M.W.'s "Fu------ jaw" and would "Fu.... kill you." She followed M.W. into the parking lot of the apartment complex. Meanwhile, M.W. told her ten year old daughter, S.W., to run. State's Exh. 1.

{¶6} Finally, Mitchell's sister was able to take Mitchell aside by putting her hands around her body, and Mitchell returned to her apartment.

{¶7} M.W. testified at Mitchell's trial that she was afraid of physical harm for herself and her daughter:

{¶8} Mitchell testified in her defense and claimed that she felt threatened at M.W.'s refusal to leave.

{¶9} Following the close of evidence and the admission of exhibits, the jury was given instructions by the trial court. Those instructions included instructions on "defense of residence."

{¶10} The jury returned with a verdict of guilty. The trial court immediately sentenced Mitchell to pay a fine of $150.00 and court costs.

{¶11} Mitchell filed a delayed appeal assigning three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶12} "I.     THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HER GUILTY OF MENACING, AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (T. 63-117; R. Exh.1; Entry, 8/31/23).

{¶13} "II.     THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO CORRECTLY INSTRUCT THE JURY ON THE ELEMENTS OF SELF-DEFENSE.  (T. 135-138).

{¶14} "III.     APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE, THEREBY DENYING HER THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTION. (T. 135-138)."

**LAW AND ANALYSIS**

**I**

{¶15} In her first assignment of error, Mitchell complains that her conviction for menacing was against the manifest weight and sufficiency of the evidence.

{¶16} The standards for challenges to the sufficiency of the evidence and for challenges to the manifest weight of the evidence are quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St. 3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. Thus, while a court of appeals may determine that a conviction is supported by sufficient evidence, that court may nevertheless conclude that the jury's verdict is against the weight of the evidence.

{¶17} Sufficiency challenges are a test of adequacy.  As the supreme court has held:

> The sufficiency of the evidence is a test of adequacy.  *Thompkins* at 386, 678 N.E.2d 541.  When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief. (citations omitted). Rather, we decide whether, if believed, the evidence can sustain the verdict

as a matter of law. This naturally entails a review of the elements of the charged offense and a review of the state's evidence.

**{¶18}** The Ohio Supreme Court borrowed in *Jenks* this sufficiency standard from the federal standard. Thus, pursuant to this standard, the reviewing court's task is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.

**{¶19}** The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶20}** Evidentiary claims that challenge the manifest weight of the evidence are reviewed under a different standard than sufficiency claims. Under the manifest weight standard of review, the reviewing court assesses all of the evidence admitted at trial to determine whether it agrees with the factfinder's resolution of conflicting evidence, sitting as a kind of "thirteenth juror," *Thompkins, supra*, at 386. The reviewing court must decide whether the jury lost its way in assessing and weighing the credibility of witnesses and admitted evidence and thereby created a manifest miscarriage of justice.

**{¶21}** Mitchell was charged with Menacing, in violation of R.C. 2903.22 which states in part:

No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.

....

{¶22} To find Mitchell guilty as charged, the trier of fact would have to find that Mitchell knowingly caused the victim to believe that she would cause physical harm to her.

{¶23} R.C. 2901.22 defines knowingly as follows:

(B) A person acts knowingly regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist ...

{¶24} Physical harm is defined as any "injury, illness or other physiological impairment regardless of its gravity or duration. R.C. 2901.01(A)(3).

{¶25} And, finally, there must be evidence that the victim believed that the offender could cause her physical harm. *State v. Harding,* 5th Dist., Holmes No. 09CA007, 2009-Ohio-6882, ¶ 28.

{¶26} Upon review of the testimony, the exhibits including the cell phone video, and the record, we find that the evidence was sufficient to sustain Mitchell's conviction for menacing. We further find that the jury verdict finding Mitchell guilty of menacing was not against the manifest weight of the evidence.

{¶27} M.W. testified that Mitchell came out of her apartment wielding a hammer raised in her hand. M.W. made no threats to Mitchell and had nothing in her possession that could be used as a weapon. Mitchell started to follow M.W. and her ten-year-old daughter screaming obscenities and threatening to beat her with the hammer and kill her. M.W. was afraid for herself and also afraid for her daughter. As evidence of her fear of Mitchell, she told her daughter to run. Here is M.W.:

[State]            Did, um...were you afraid?

[M.W.]             Yes. Tr. 70

[State]            And were you afraid that she [Mitchell] would go a little

further?

[M.W.]             Yes, but my first concern was my child and that is why I was

just telling my child to run.  Tr. 72.

**{¶28}** Viewing this evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that Mitchell engaged in knowingly causing M.W. to believe that she would cause physical harm to her and/or her daughter.

**{¶29}** Mitchell did not deny her actions, but claimed that she was acting in defense of her property.  That claim was soundly rejected by the jury, and we do not find that the jury lost its way.

**{¶30}** The first assignment of error is overruled.

## II.

**{¶31}** In her second assignment of error, Mitchell claims that the trial court erred and abused its discretion in giving the jury only a partial jury instruction of defense of residence.  Mitchell contends that it was plain error for the court to fail to instruct the jury that Mitchell had no duty to retreat.

**{¶32}** An appellate court applies an abuse of discretion standard of review when reviewing a claim that the trial court's jury instructions were faulty. *State v. Wolons,* 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).  An appellate court will review the trial court's instructions as a whole to determine, if taken in their entirety, the instructions fairly state

the law that was applicable to the evidence presented at trial. When a defendant claims self-defense, defense of another or defense of property, the trial court no longer is limited to the evidence the defendant presents, but must look to the record and consider evidence from whatever source the evidence may come. *State v. Robinette,* 5th Dist., Stark 2021 CA 00124, 2023-Ohio 5, ¶ 42.

{¶33} While the trial court has broad discretion in jury instructions, it must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as a fact finder. *State v. White,* 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939; *State v. Robinette,* 5th Dist., Stark 2021 CA 00124, 2023-Ohio-5.

{¶34} In this case, Mitchell's counsel submitted a pleading notifying the court and the state that she would be claiming defense of residence. So, too, Mitchell's counsel submitted proposed jury instructions of defense of residence. The trial court gave the instruction that was requested by Mitchell. Tr. 135-138. Mitchell's counsel did not request an instruction on no duty to retreat.

{¶35} Therefore, we review Mitchell's assignment of error under the doctrine of plain error. As noted by appellant, plain error requires a finding that the outcome of the trial would have been different. The exercise of plain error discretion should be done "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Barnes,* 94 Ohio St.3d, 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.

**{¶36}** The elements of defense of self-defense are as follows:

(1) that the defendant was not at fault in creating the situation giving rise to the affray, (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of physical harm and that his [or her] only means of escape from such danger was in the use of such force and (3) that the defendant did not violate any duty to retreat or avoid the danger.

**{¶37}** R.C. 2901.09(B) states:

For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be.

**{¶38}** We find no plain error here because Mitchell was not in her residence or the curtilage of her residence when she threatened M.W. with a hammer. M.W. never stepped inside Mitchell's apartment and remained on the doorstep until the threats by Mitchell caused her to run. The cell-phone video entered as State's Exhibit 1 shows Mitchell exit the door of her apartment and chase M.W. and her ten-year-old daughter across the paved sidewalk to the parking lot of the apartment. The sidewalk was part of the common area of the apartment complex. It was only when her sister, Mary, intervened that Mitchell retreated back to her apartment.

**{¶39}** To carry its burden of persuasion, the state need only disprove one of the self-defense elements beyond a reasonable doubt. The state proved beyond a reasonable doubt that the defendant was at fault in creating the situation. *State v. Woods,*

5th Dist. Stark No. 2022-Ohio-3339, ¶ 52 (An erroneous jury instruction does not constitute plain error unless the outcome of the trial clearly would have been different).

**{¶40}** We find no plain error in the failure of the trial court to instruct the jury on no duty to retreat. The outcome of the trial would not have been different.

**{¶41}** Accordingly, the second assignment of error is overruled.

**III**

**{¶42}** In appellant's third assignment of error, she claims that her trial counsel was ineffective in failing to request a jury instruction on Mitchell's no duty to retreat from her residence. We disagree. Here, Mitchell claimed that she threatened to kill M.W. and break her jaw in defense of her residence. Because we have found that Mitchell was not in her home or its curtilage when she threatened M.W. with a hammer shouting obscenities and threatening to break her jaw, we find no ineffective assistance of counsel. We have also found that the state met its burden of persuasion to prove beyond a reasonable doubt that Mitchell was at fault in creating the situation.

**{¶43}** Pursuant to *Strickland v. Washington,* 466 U. S. 668, 104 S.Ct. 2052, 50 L.Ed.2d 674 (1984) and *State v. Bradley,* 42 Ohio St. 3d 136, 538 N.E.2d 373 (1989), to prevail on an ineffective assistance of counsel claim, the defendant must demonstrate both deficient performance which falls below an objective standard of reasonable representation and (2) resulting prejudice which is so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome, which is less than a preponderance of the evidence. *Strickland,* 466 U.S. at 694.

**{¶44}** Mitchell cannot demonstrate that either one of the *Strickland* prongs have

been met.  Accordingly, her third assignment of error is overruled.

## CONCLUSION

**{¶45}** For the foregoing reasons, the judgment of the Municipal Court of Licking

County, Ohio, convicting appellant of menacing is affirmed.


By: Wise, J.

Delaney, P. J., and

Hoffman, J., concur.


JWW/kt  0430